VEHICLE WOODSTOCK CO. *v.* BOWLES.

(Division A. May 14, 1930.)

[128 So. 99. No. 28647.]

Brady, **Dean** & **Hobbs**, of Brookhaven, for appellant.

**Kennedy & Geisenberger,** of Natchez, for appellant.

**Engle & Laub,** of Natchez, for appellee.

Engle & Laub, of Natchez, and **G. Garland Lyell,** of Jackson, for appellee.

Argued orally by **A. H. Geisenberger** and **T. Brady**, for appellant, and by **S. B. Laub**, for appellee.

**McGowen, J.,** delivered the opinion of court.

The appellee, M. R. Bowles, sued the appellant, the Vehicle Woodstock Company, for the loss of his left eye while he was temporarily serving as a sawyer for the appellant, charging that the appellant was negligent in failing to have a wire screen between the saw and the sawyer, which negligence resulted in a fragment of bark being

thrown from the saw, striking the sawyer in his left eye and causing the subsequent loss thereof.

The verdict of the jury was for seven thousand five hundred dollars, from which the appellant, the Vehicle Woodstock Company, prosecutes an appeal here.

The appellant was operating a small sawmill, with a capacity of ten thousand feet of lumber per day. There was used therein a circular saw operated by a lever controlled by the sawyer, and the log was carried to the saw and slabs sawn therefrom by bringing the log on the carriage in contact with the saw. It was necessary for another employee to ride the carriage while it was being conveyed to the saw; such employee riding on the opposite side from the sawyer. There was no screen between the sawyer and the saw. The appellee's contention was that it was the nondelegable duty of the master to use reasonable care to furnish the servant a safe place to work, and that it was also the duty of the master to furnish the servant with reasonably safe ways, means, and appliances and machinery with which to pursue the master's business.

This record shows that at the time of the injury complained of the appellee was serving temporarily as a sawyer in the absence of the regular man, and had only been at work about seventeen hours, or part of two days, and that he had theretofore been employed as an edger for about a week previous to his injury.

At the time of his injury, the appellee was in the discharge of his duty operating the lever which controls the movement of the carriage on which the logs are in position to be carried to the saw. He was not directly in front of the saw, but was some feet to the left, and about eight feet distant from the saw. There is nothing in this record to show any defect in the machinery of the sawmill, and the verdict of the jury and the gravamen of the negligence complained of here was for the failure of the master to furnish a screen which is said to be sometimes placed in sawmills hanging suspended, sufficiently wide

and tall to shield the body of the operator of the saw from any flying particles or debris which might be thrown in his direction by the circular saw. The appellee had worked in several sawmills in which he had been furnished with such a screen. It is not shown to be such a means or appliance as is furnished with standard sawmill equipments, and a number of witnesses examined on both sides testified that such screens are rarely in use in sawmills of the size, kind, and capacity of the sawmill here under review. On the other hand, it is shown by numerous witnesses that sawyers regard such a screen as a dangerous appliance, in that it is the duty of sawyers to be on the lookout, and in cases of danger to stop the carriage instantly as it goes back and forth from the saw. The witnesses also testified that such screen was dangerous because flying particles from the logs would clog the wire mesh and obscure the vision of the sawyer, whose special duty it was to be on the lookout to protect the men riding the carriage to the saw engaged in sawing such logs so being transported back and forth. One witness saw a piece of bark protruding from a log, and evidently was of the opinion that this was what struck the saw and was flung violently thereby into the left eye of the appellee. It was shown by all the witnesses, without dispute, that as to these employees riding to and fro on the carriage it was not practical to ever use a screen for their protection, although these operatives were, of necessity, much closer to the saw and the sawing operation than was the sawyer. It was shown to be the duty of the sawyer to also keep a lookout for obstructions and for danger to these men as well as to properly operate the saw.

The appellant insists that on this state of facts it was not incumbent upon it, as master, to furnish a screen, and especially not its duty, when it is shown that the appellee went upon the discharge of his duties knowing that no screen was being used in that particular sawmill for the purpose of protecting the sawyer, and that he operated

the saw without complaint. In other words, the appellant insists that it was not negligence not to provide a screen, there being no defect in the machinery, and the accident being due only to the ordinary risk and hazard incident to the operation of a saw engaged in sawing lumber, and that the place was safe, and that it was shown, by evidence, that sawmills of like kind throughout the country were not equipped with such screens.

The general rule is that the master is not required to furnish the newest, best, and safest machinery, appliances, and places for work, but his obligation is met when he furnishes such as are reasonably safe and suitable for the purpose had in view. 39 C. J. 429.

It is also the rule that, where the equipment is standard, and such as is in general use by businesses of the same kind, under similar conditions, there is no negligence, even though some other way might be a safer and better way, or some other appliance might be a safer and better appliance. Hatter v. Illinois Cent. R. Co., 69 Miss. 642, 13 So. 827; Kent v. Yazoo & M. V. R. Co., 77 Miss. 499, 27 So. 620, 78 Am. St. Rep. 534; and Jones v. Yazoo & M. V. R. Co., 90 Miss. 547, 43 So. 813.

The machinery, appliances, and ways here shown to have been in use by the master were in conformity with common and ordinary usage in sawmills of like kind and capacity similarly situated. 39 C. J. 332.

Counsel for appellee insists that the evidence of the plaintiff, appellee here, that he had been at work in some sawmills where, upon demand, he was furnished with a screen, makes an issue of fact upon common usage and custom. His evidence does not show common usage or custom or tend to do so.

This case is to be differentiated from the case of Cotton Mills Products Co. v. Oliver, 153 Miss. 362, 121 So. 111, for, in that case, it was shown that the master had allowed a simple device for the protection of the oiler of the machines to fall into disuse, and it was shown that these machines were manufactured with the devices

thereon. Evidence was offered in that case to show that other masters had also allowed this device to fall into disuse; and, as we view this opinion, it was undertaken in that case by the master to avail himself of the negligent method adopted by other masters in operating their machinery. The negligent custom or usage of others will not avail as a defense.

Under all the facts of this case, we do not think there was negligence on the part of the master in failing to have a screen provided for the protection of this sawyer. The loss of his eye, unfortunate as it was, and serious in its consequences to him, was a simple accident against which the master was not obligated to furnish a screen in order to protect the sawyer.

The proof in this case is not controverted that the master in this case did not buy the machinery with a screen, nor is it the custom of such masters to so equip their machinery.

In addition to this statement, the evidence is not controverted here that the sawyers of other mills, under similar conditions, regarded the screen as a hindrance and not a help, and as increasing the danger and hazard to the other employees engaged in and about operating the machinery as in the case here.

It is certain, from this record, that the sawyer was in no more danger, perhaps less, than any of the other employees who were actively engaged in the sawing operation.

There being no negligence chargeable to the master, the sawyer in this case assumed the risk of the usual and ordinary danger and hazard attendant upon, and incident to, the operation of a sawmill.

Reversed, and judgment here for the appellant.